UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 11-3-JBC

SHARON SECKMAN,                                                                                    PLAINTIFF,

V.                          MEMORANDUM OPINION AND ORDER

THE TALBOTS INC.,                                                                                DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

Pending before the court is Talbots' motion for summary judgment. R.35. Because the parties have not fully addressed the issues, they will be required to file supplemental memoranda.

Sharon Seckman was employed by Talbots from 1999 until her termination in September 2009. Prior to 2008 Seckman had received exemplary reviews of her job performance. That year Diane Montgomery became Seckman's supervisor. In the short time between Montgomery's becoming Seckman's new supervisor and her termination, Seckman received at least two written reprimands and a number of verbal requests for improved communication from Montgomery. In March 2009 a survey of Seckman's staff conducted by Talbots indicated that Seckman was not effective in her role as "brand coach" because she was "not focused." Soon thereafter Talbots issued a warning – written by Montgomery – to Seckman, which criticized Seckman's "ineffective communication skills," "inappropriate and

1

unprofessional manner," and "leadership" that was "lacking."  Montgomery accused Seckman of being incompetent in sending email and of not actively listening to and "talking over" her staff.  Policy and procedure violations were also mentioned in the warning, including Seckman's leaving work prior to the scheduled end of her shift.  The written warning concluded with a notice stating: "Failure to demonstrate improvement in the areas outlined above . . . may result in . . . immediate termination."

In September 2009 Talbots issued a written "final warning" to Seckman, which referred to Seckman's failure to "demonstrate the ability to lead"; failure to "effectively communicate to her staff"; communicating "from a place of misinformation and emotional reaction"; and for taking time off without prior approval from her supervisor.  The final warning contained a similar notice of possible termination as had the first warning: "Your failure to demonstrate improvement in the areas outlined above and consistently meet job expectation may result in further performance counseling and/or immediate termination."  Seckman wrote detailed responses to both warnings in which she took issue with each of the allegations but made no mention of age or discrimination.

After receiving her final warning, Seckman told staff at the Lexington stores that she had received a final warning and that there was a "mole in the store," suggesting that someone in the store was feeding information to Montgomery. Talbots learned of Seckman's statements and conducted an investigation,

2

concluding that Seckman had acted unprofessionally and in violation of her final warning and Talbots' Rules of Conduct.  Montgomery recommended that Seckman be terminated, and Talbots authorized her termination for "unsatisfactory performance" and "because she was in violation of her Final Warning."  Talbots perceived the "mole in the store" statement as unprofessional and demonstrating poor judgment.  Seckman acknowledged making the statement but did not feel that it was unprofessional.

In December 2009, Seckman filed charges of discrimination with the Lexington-Fayette Urban County Human Rights Commission and the Equal Employment Opportunity Commission. The local charge was found to be without merit, a decision memorialized in a June 2010 letter from the Human Rights Commission to Seckman, who filed this age discrimination suit against Talbots in December 2010 (removed to this court in January 2011).  Seckman maintains that Talbots discriminated against her because of her age in violation of KRS 344.040 when Seckman received negative performance evaluations and was terminated. Under *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393-94 (6th Cir. 2008), age discrimination claims brought under that statute are analyzed under the same standards as claims brought under the federal Age Discrimination in Employment Act (ADEA).

Seckman has not produced any direct evidence – "blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" – of

3

intentional age discrimination by Talbots. *See Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006). Therefore, she must utilize the indirect, burden-shifting approach, as outlined in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). Viewing the facts in a light most favorable to Seckman, she has made a prima facie showing of age discrimination by Talbots as to her termination: Seckman is 40 years of age; she was subjected to an adverse employment action by being fired; she was qualified for the position from which she was fired, as she had worked her way up to her position over the course of a nearly-ten-year career at Talbots; and she was replaced by a younger individual. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir., 2003). Seckman cannot make a prima facie showing of age discrimination based on her negative performance evaluations, however, because the performance evaluations did not result in a materially adverse change in the terms and conditions of Seckman's employment. *See Love v. Elec. Power Bd. of Chattanooga*, 392 Fed. Appx. 405, 408 (6th Cir. 2010).

 Once Seckman has made a prima facie case for age discrimination, the burden of production shifts to Talbots to proffer a legitimate, non-discriminatory reason for Seckman's termination. Talbots offers a number of legitimate nondiscriminatory reasons for Seckman's termination, including unsatisfactory performance and unprofessionalism, as described in the two warning letters issued by Talbots. Talbots claims that Seckman's various recurring issues at work

4

included lack of leadership, poor communication skills and unprofessionalism. According to Talbots, Seckman's "poor performance as a General Manager, compounded by her unprofessionalism, warranted dismissal." R. 55 at 6.

In order to survive a motion for summary judgment, Seckman must raise a genuine dispute of material fact as to whether Talbots' articulated reason for the termination was actually a pretext designed to mask illegal discrimination. Seckman can do so by showing that Talbots' explanation of the termination either (1) has no basis in fact, (2) was not the actual reason for the termination, or (3) is insufficient to motivate the termination. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). Seckman retains the ultimate burden of producing sufficient evidence from which a jury could reasonably reject Talbots' explanation and infer that the defendants intentionally discriminated against her." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

Seckman cannot show that Talbots' explanation of her termination has no basis in fact because the disciplinary actions taken by Talbots prior to Seckman's dismissal are undisputed, but she attempts to present a question of fact as to whether Talbots' proffered reasons were the actual reasons for her termination. Seckman presents statements from various former Talbots employees and articles that suggest that Seckman's termination was a part of a larger corporate "purge" of older workers (even though she concedes that she is not making a pattern-or

5

practice claim).

Seckman refers to an affidavit filed by Stacy Preston, a former Talbots' employee, who was told by supervisor Katie Kline to make older workers uncomfortable so they would quit. Preston was told by Kline that Talbots was trying to get rid of its older employees. Seckman does not explain the connection between herself and Katie Kline, and she points to no indication in the record that Kline directly influenced the decision to terminate Seckman. Seckman also refers to Laura Fredrickson, who worked in a Talbots store in Louisville while over the age of forty. Frederickson was told by her supervisor, who was also Diane Montgomery, that she was being let go because Talbots was "heading in a different direction." Although that statement is facially neutral, Seckman alleges that Talbots was trying to appeal to a younger clientele, arguing that Talbots' "different direction" included an intentional reduction of older employees as part of an attempt to appeal to a younger clientele. Although former Talbots' assistant manager Vickie Green resigned her assistant manager position at a Lexington Talbots over a year after Seckman's termination, Green resigned because she believed that the "new direction" of Talbots did not include people of her age.

Such an approach implies (but does not specifically argue, with the citation of authority) that the evidence in an age discrimination case should be viewed in its entirety, not piece by piece; that *either* these statements are connected to Seckman's supervisor *or* that a corporate, institutional age bias trumps the need for

6

a plaintiff to demonstrate bias on the part of the individual who decided to terminate Seckman; and that a company-wide age bias permeates each individual termination decision, such as the one related to Seckman.

Neither party has addressed these significant issues. It is the plaintiff's burden to articulate them, with precise citations to both the record and pertinent case law. Only after that is done can the court conclude whether a reasonable jury could find that Seckman has met her burden under the *McDonnell-Douglas* burden-shifting framework to show that Talbots' proffered explanations of the motivation behind Seckman's firing was pretext for age discrimination. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 493 (6th Cir. 2010). Accordingly,

**IT IS ORDERED** that the plaintiff shall file a supplemental response addressing these issues no later than January 10, 2013.

**IT IS FURTHER ORDERED** that the defendant shall file a supplemental reply memorandum addressing these issues no later than January 24, 2013.

The motion shall thereafter stand submitted for decision.

Signed on December 28, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY